UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                                                  Case No. 06-10064 (SMB)

MUSICLAND HOLDINGS CORP., *et al.*,[1]                        Chapter 11

                              Debtors.                               Jointly Administered
------------------------------------------------------------X
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF MUSICLAND HOLDINGS
CORP., *et al.*,

                              Plaintiff,                              Adv. Proc. No. 06-            (SMB)

        - against -

SONY MUSIC ENTERTAINMENT INC. a/k/a
SONY MUSIC USA, BERTELSMANN MUSIC
GROUP, INC. a/k/a BMG MUSIC, SONY BMG
MUSIC DISTRIBUTION a/k/a SONY BMG
MUSIC ENTERTAINMENT, and RED
DISTRIBUTION, LLC a/k/a RELATIVITY
ENTERTAINMENT DISTRIBUTION, RED
DISTRIBUTION, INC. a/k/a RELATIVITY
ENTERTAINMENT DISTRIBUTION,
                              Defendants.
------------------------------------------------------------X

**COMPLAINT TO AVOID AND RECOVER PREFERENTIAL
AND/OR FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF**

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their counsel Hahn & Hessen LLP, hereby files this Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers and, in support thereof, states:

---

[1]   The Debtors are: Musicland Holding Corp., Media Play, Inc., MG Financial Services, Inc., MLG Internet, Inc., Musicland Purchasing Corp., Musicland Retail, Inc., Request Media, Inc., Sam Goody Holding Corp., Suncoast Group, Inc., Suncoast Holding Corp., Suncoast Motion Picture Company, Inc., Suncoast Retail, Inc., TMG Caribbean, Inc., TMG-Virgin Islands, Inc., and The Musicland Group, Inc.

- 1 -

## NATURE OF THE ACTION

1.    This is an adversary proceeding brought in the above-captioned bankruptcy cases pursuant to Part VII of the Bankruptcy Rules seeking to avoid certain preferential and/or fraudulent transfers made by the Debtors to the above-captioned defendants Sony Music Entertainment Inc. a/k/a Sony Music USA (collectively, "Sony"), Bertelsmann Music Group, Inc. a/k/a BMG Music, Sony BMG Music Distribution a/k/a Sony BMG Music Entertainment (collectively, "BMG") and RED Distribution, LLC a/k/a Relativity Entertainment Distribution, RED Distribution, Inc. a/k/a Relativity Entertainment Distribution ("RED", collectively with Sony and BMG, the "Defendants") and to recover the value thereof, pursuant to 11 U.S.C. (the "Bankruptcy Code") §§ 547, 548, 550 and 551.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

3.    This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. § 157(a).

4.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

5.    Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

## PARTIES

6.    On January 12, 2006 (the "Petition Date"), the Debtors commenced with this Court, voluntary cases (the "Cases") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

- 2 -

7.   On January 20, 2006, the United States Trustee for the Southern District of New York appointed seven of the Debtors' largest unsecured creditors to the Committee.

8.   Since the Petition Date, the Debtors have been managing their affairs and conducting their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.   On February 21, 2006, this Court entered an order (the "DIP Order") approving the Debtors' motion for post-petition financing (the "DIP Motion") which, *inter alia*, provided, pursuant to section 4.6.3, the Committee with sixty days from the date of appointment of counsel to the Committee to file certain claims against the "Secured Trade Creditors" (the "DIP STC Claims").

10.  Pursuant to several so-ordered stipulations, the Committee's time to file the DIP STC Claims was extended up to and including November 3, 2006.

11.  Upon information and belief, Defendants are (a) corporations or other legal entities incorporated and/or formed under Delaware law and (b) have been identified as Secured Trade Creditors under section 4.6.3 of the DIP Order or by their counsel.

**THE SONY TRANSFERS**

12.  On or within 90 days prior to the Petition Date (the "Preference Period"), Musicland Purchasing Corp. ("MPC"), one of the Debtors, made one or more monetary transfer to or for the benefit of Sony, as set forth on Exhibit "A" annexed hereto (the "Known Sony Monetary Transfers"). The list of transfers on Exhibit "A" does not include payments which were made one (1) day after the invoice date, on the invoice date or prior to the invoice date, as the Committee believed that such transfers were be considered either prepayments or contemporaneous exchanges, and thus not recoverable as preferences (the "Sony Prepayments").

- 3 -

13. Exhibit "A" reflects the Committee's present knowledge of the monetary transfers made to Sony by MPC. During the course of this proceeding the Committee may learn (through discovery or otherwise) of additional monetary transfers made by MPC or any of the other Debtors to the Sony during the Preference Period or that an Sony Prepayment was in fact an avoidable transfer. The Committee is seeking to avoid and recover all such monetary transfers, whether such monetary transfers presently are reflected on Exhibit "A" or not. Collectively, all avoidable monetary transfers made by the Debtors to or for the benefit of Sony during the Preference Period (whether such monetary transfers presently are reflected on Exhibit "A" or not) are referred to herein as the "Sony Monetary Transfers".

14. During the Preference Period, the Debtors returned various goods to or for the benefit of Sony. Those returns and their value are reflected in various chargebacks which are set forth on Exhibit "B" annexed hereto (the "Known Sony Returned Goods Transfers").

15. Exhibit "B" reflects the Committee's present knowledge of the returned goods made by the Debtors to Sony. During the course of this proceeding the Committee may learn (through discovery or otherwise) of additional returned goods made by the Debtors to the Sony during the Preference Period. The Committee is seeking to avoid and recover the value of all such transfers, whether such transfers presently are reflected on Exhibit "B" or not. Collectively, all avoidable transfers made by the Debtors of returned goods to or for the benefit of Sony during the Preference Period (whether such transfers presently are reflected on Exhibit "B" or not) are referred to herein as the "Sony Returned Goods Transfers", collectively with the Sony Monetary Transfers, the "Sony Transfers").

871115.009 - 1225971.1

**THE BMG TRANSFERS**

16.     During the Preference Period, MPC made one or more monetary transfer to or for the benefit of BMG, as set forth on Exhibit "C" annexed hereto (the "Known BMG Monetary Transfers").  The list of transfers on Exhibit "C" does not include payments which were made one (1) day after the invoice date, on the invoice date or prior to the invoice date, as the Committee believed that such transfers were be considered either prepayments or contemporaneous exchanges, and thus not recoverable as preferences (the "BMG Prepayments").

17.     Exhibit " C" reflects the Committee's present knowledge of the monetary transfers made to BMG by MPC.  During the course of this proceeding the Committee may learn (through discovery or otherwise) of additional monetary transfers made by MPC or any of the other Debtors to BMG during the Preference Period or that a BMG Prepayment was in fact an avoidable transfer.  The Committee is seeking to avoid and recover all such monetary transfers, whether such monetary transfers presently are reflected on Exhibit "C" or not.  Collectively, all avoidable monetary transfers made by the Debtors to or for the benefit of BMG during the Preference Period (whether such monetary transfers presently are reflected on Exhibit "C" or not) are referred to herein as the "BMG Monetary Transfers".

18.     During the Preference Period, the Debtors returned various goods to or for the benefit of BMG.  Those returns and their value are reflected in various chargebacks which are set forth on Exhibit "D" annexed hereto (the "Known BMG Returned Goods Transfers").

19.     Exhibit "D" reflects the Committee's present knowledge of the returned goods made by the Debtors to BMG.  During the course of this proceeding the Committee may learn (through discovery or otherwise) of additional returned goods made by the Debtors to the BMG during the Preference Period.  The Committee is seeking to avoid and recover the value of all such transfers, whether such transfers presently are reflected on Exhibit "D" or not.  Collectively,

- 5 -

all avoidable transfers made by the Debtors of returned goods to or for the benefit of BMG during the Preference Period (whether such transfers presently are reflected on Exhibit "D" or not) are referred to herein as the "BMG Returned Goods Transfers", collectively with the BMG Monetary Transfers, the "BMG Transfers").

## THE RED TRANSFERS

20. During the Preference Period, MPC made one or more monetary transfer to or for the benefit of RED, as set forth on Exhibit "E" annexed hereto (the "Known RED Monetary Transfers"). The list of transfers on Exhibit "E" does not include payments which were made one (1) day after the invoice date, on the invoice date or prior to the invoice date, as the Committee believed that such transfers were be considered either prepayments or contemporaneous exchanges, and thus not recoverable as preferences (the "RED Prepayments").

21. Exhibit " E" reflects the Committee's present knowledge of the monetary transfers made to RED by MPC. During the course of this proceeding the Committee may learn (through discovery or otherwise) of additional monetary transfers made by MPC or any of the other Debtors to RED during the Preference Period or that a RED Prepayment was in fact an avoidable transfer. The Committee is seeking to avoid and recover all such monetary transfers, whether such monetary transfers presently are reflected on Exhibit "E" or not. Collectively, all avoidable monetary transfers made by the Debtors to or for the benefit of RED during the Preference Period (whether such monetary transfers presently are reflected on Exhibit "E" or not) are referred to herein as the "RED Monetary Transfers".

22. During the Preference Period, the Debtors returned various goods to or for the benefit of RED. Those returns and their value are reflected in various chargebacks which are set forth on Exhibit "F" annexed hereto (the "Known RED Returned Goods Transfers").

- 6 -

23. Exhibit "F" reflects the Committee's present knowledge of the returned goods made by the Debtors to RED. During the course of this proceeding the Committee may learn (through discovery or otherwise) of additional returned goods made by the Debtors to the RED during the Preference Period. The Committee is seeking to avoid and recover the value of all such transfers, whether such transfers presently are reflected on Exhibit "F" or not. Collectively, all avoidable transfers made by the Debtors of returned goods to or for the benefit of RED during the Preference Period (whether such transfers presently are reflected on Exhibit "F" or not) are referred to herein as the "RED Returned Goods Transfers", collectively with the RED Monetary Transfers, the "RED Transfers").

**FIRST CAUSE OF ACTION**
**(Preference Claim Against Sony)**

24. The Committee repeats and realleges paragraphs "1" through "15" hereof as if fully set forth herein.

25. The Sony Transfers were made within 90 days prior to the Petition Date.

26. The Sony Transfers were transfers of an interest of one or more of the Debtors in property.

27. The Sony Transfers were made to or for the benefit of Sony, a creditor of one or more of the Debtors.

28. The Sony Transfers were made for or on account of antecedent debts owed to Sony by one or more of the Debtors before such Transfers were made.

29. The Sony Transfers were made while the Debtors were insolvent.

30. The Sony Transfers enabled Sony to receive more than Sony would receive if: (i) the Debtors' cases were cases under chapter 7 of the Bankruptcy Code; (ii) the Sony Transfers

- 7 -

had not been made; and (iii) Sony received payment on account of the debt paid by the Sony Transfers to the extent provided by the provisions of the Bankruptcy Code.

31. The Sony Transfers constitute preferential transfers which should be avoided as preferences pursuant to Bankruptcy Code § 547 and are recoverable from Sony pursuant to Bankruptcy Code § 550.

### SECOND CAUSE OF ACTION
### (Fraudulent Transfer Claim Against Sony)

32. The Committee pleads this Second Cause of Action in the alternative and restates and realleges the allegations of paragraphs "1" through "15" and "24" through "31" above as if fully set forth herein. The Committee brings this Second Cause of Action in the event that Sony asserts that one or more of the Sony Transfers was made on behalf of a Debtor other than the Debtor that owed the corresponding antecedent debt.

33. The Sony Transfers constitute transfers of an interest of the Debtors in property.

34. The Debtors received less than a reasonably equivalent value in exchange for the Sony Transfers.

35. The Debtors (i) were insolvent on the date that the Sony Transfers were made, or became insolvent as a result of the Sony Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

36. The Sony Transfers constitute fraudulent transfers which should be avoided pursuant to Bankruptcy Code § 548 and are recoverable from Sony pursuant to Bankruptcy Code § 550.

## THIRD CAUSE OF ACTION
### (Disallowance of Sony's Proofs of Claim or Scheduled Claims)

37. The Committee repeats and realleges the allegations of paragraphs "1" through "15" and "24" through "36" above as if fully set forth herein.

38. Sony is an entity from which property is recoverable under section 550 of the Bankruptcy Code and is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code.

39. Sony has not paid the amount, or turned over such property, for which Sony is liable under section 550 of the Bankruptcy Code.

40. To the extent that Sony currently possesses filed or scheduled claims (or a portion thereof) against the Debtors which have not been transferred or assigned to an unrelated party who is not a member of the Secured Trade Creditors Committee (as defined in the DIP Motion) (the "Sony Claims"), the Sony Claims should be disallowed until the Sony Transfers are repaid in full to the Debtors pursuant to section 502(d) of the Bankruptcy Code.

## FOURTH CAUSE OF ACTION
### (Preference Claim Against BMG)

41. The Committee repeats and realleges paragraphs "1" through "11" and "16" through "19" hereof as if fully set forth herein.

42. The BMG Transfers were made within 90 days prior to the Petition Date.

43. The BMG Transfers were transfers of an interest of one or more of the Debtors in property.

44. The BMG Transfers were made to or for the benefit of BMG, a creditor of one or more of the Debtors.

45.    The BMG Transfers were made for or on account of antecedent debts owed to BMG by one or more of the Debtors before such Transfers were made.

46.    The BMG Transfers were made while the Debtors were insolvent.

47.    The BMG Transfers enabled BMG to receive more than BMG would receive if: (i) the Debtors' cases were cases under chapter 7 of the Bankruptcy Code; (ii) the BMG Transfers had not been made; and (iii) BMG received payment on account of the debt paid by the BMG Transfers to the extent provided by the provisions of the Bankruptcy Code.

48.    The BMG Transfers constitute preferential transfers which should be avoided as preferences pursuant to Bankruptcy Code § 547 and are recoverable from BMG pursuant to Bankruptcy Code § 550.

## FIFTH CAUSE OF ACTION
### (Fraudulent Transfer Claim Against BMG)

49.    The Committee pleads this Fifth Cause of Action in the alternative and restates and realleges the allegations of paragraphs "1" through "11", "16" through "19" and "41" through "48" above as if fully set forth herein.  The Committee brings this Fifth Cause of Action in the event that BMG asserts that one or more of the Transfers was made on behalf of a Debtor other than the Debtor that owed the corresponding antecedent debt.

50.    The BMG Transfers constitute transfers of an interest of the Debtors in property.

51.    The Debtors received less than a reasonably equivalent value in exchange for the BMG Transfers.

52.    The Debtors (i) were insolvent on the date that the BMG Transfers were made, or became insolvent as a result of the BMG Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the

Debtors was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

53. The BMG Transfers constitute fraudulent transfers which should be avoided pursuant to Bankruptcy Code § 548 and are recoverable from BMG pursuant to Bankruptcy Code § 550.

## SIXTH CAUSE OF ACTION
### (Disallowance of BMG's Proofs of Claim or Scheduled Claims)

54. The Committee repeats and realleges the allegations of paragraphs "1" through "11", "16" through "19" and "41" through "53" above as if fully set forth herein.

55. BMG is an entity from which property is recoverable under section 550 of the Bankruptcy Code and is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code.

56. BMG has not paid the amount, or turned over such property, for which BMG is liable under section 550 of the Bankruptcy Code.

57. To the extent that BMG currently possesses filed or scheduled claims (or a portion thereof) against the Debtors which have not been transferred or assigned to an unrelated party who is not a member of the Secured Trade Creditors Committee (as defined in the DIP Motion) (the "BMG Claims"), the BMG Claims should be disallowed until the BMG Transfers are repaid in full to the Debtors pursuant to section 502(d) of the Bankruptcy Code.

## SEVENTH CAUSE OF ACTION
### (Preference Claim Against RED)

58. The Committee repeats and realleges paragraphs "1" through "11" and "20" through "23" hereof as if fully set forth herein.

59. The RED Transfers were made within 90 days prior to the Petition Date.

- 11 -

60. The RED Transfers were transfers of an interest of one or more of the Debtors in property.

61. The RED Transfers were made to or for the benefit of RED, a creditor of one or more of the Debtors.

62. The RED Transfers were made for or on account of antecedent debts owed to RED by one or more of the Debtors before such Transfers were made.

63. The RED Transfers were made while the Debtors were insolvent.

64. The RED Transfers enabled RED to receive more than RED would receive if: (i) the Debtors' cases were cases under chapter 7 of the Bankruptcy Code; (ii) the RED Transfers had not been made; and (iii) RED received payment on account of the debt paid by the RED Transfers to the extent provided by the provisions of the Bankruptcy Code.

65. The RED Transfers constitute preferential transfers which should be avoided as preferences pursuant to Bankruptcy Code § 547 and are recoverable from RED pursuant to Bankruptcy Code § 550.

### EIGHTH CAUSE OF ACTION
### (Fraudulent Transfer Claim Against RED)

66. The Committee pleads this Fifth Cause of Action in the alternative and restates and realleges the allegations of paragraphs "1" through "11", "20" through "23" and "58" through "65" above as if fully set forth herein. The Committee brings this Eighth Cause of Action in the event that RED asserts that one or more of the Transfers was made on behalf of a Debtor other than the Debtor that owed the corresponding antecedent debt.

67. The RED Transfers constitute transfers of an interest of the Debtors in property.

68. The Debtors received less than a reasonably equivalent value in exchange for the RED Transfers.

871115.009 - 1225971.1

69. The Debtors (i) were insolvent on the date that the RED Transfers were made, or became insolvent as a result of the RED Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

70. The RED Transfers constitute fraudulent transfers which should be avoided pursuant to Bankruptcy Code § 548 and are recoverable from RED pursuant to Bankruptcy Code § 550.

### NINTH CAUSE OF ACTION
### (Disallowance of RED's Proofs of Claim or Scheduled Claims)

71. The Committee repeats and realleges the allegations of paragraphs "1" through "11", "20" through "23" and "58" through "70" above as if fully set forth herein.

72. RED is an entity from which property is recoverable under section 550 of the Bankruptcy Code and is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code.

73. RED has not paid the amount, or turned over such property, for which RED is liable under section 550 of the Bankruptcy Code.

74. To the extent that RED currently possesses filed or scheduled claims (or a portion thereof) against the Debtors which have not been transferred or assigned to an unrelated party who is not a member of the Secured Trade Creditors Committee (as defined in the DIP Motion) (the "RED Claims"), the RED Claims should be disallowed until the RED Transfers are repaid in full to the Debtors pursuant to section 502(d) of the Bankruptcy Code.

871115.009 - 1225971.1

## TENTH CAUSE OF ACTION
### (Fraudulent Transfer Claim Against the Defendants)

75. The Committee pleads this Seventh Cause of Action in the alternative and restate and reallege the allegations of paragraphs "1" through "74" above as if fully set forth herein. The Committee brings this Tenth Cause of Action in the event that one, two or all of the Defendants assert that one or more of the Sony Transfers, the BMG Transfers or the RED Transfers were made to a Defendant other than the Defendant that was owed the corresponding antecedent debt.

76. The Sony Transfers, the BMG Transfers and the RED Transfers constitute transfers of an interest of the Debtors in property.

77. The Debtors received less than a reasonably equivalent value in exchange for the Sony Transfers, the BMG Transfers and the RED Transfers.

78. The Debtors (i) were insolvent on the date that the Sony Transfers, the BMG Transfers and the RED Transfers were made, or became insolvent as a result of the Sony Transfers, the BMG Transfers and the RED Transfers; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

79. The Sony Transfers, the BMG Transfers and the RED Transfers constitute fraudulent transfers which should be avoided pursuant to Bankruptcy Code § 548 and are recoverable from the Defendants pursuant to Bankruptcy Code § 550.

**WHEREFORE**, for the foregoing reasons, the Committee respectfully requests the following relief:

A. That the Sony Transfers, the BMG Transfers and the RED Transfers be avoided;

B. That judgment be entered in favor of the Committee and against Sony, in an amount at least $2,989,911.96 (plus such additional transfer amounts that the Committee learns, through discovery or otherwise, were made by the Debtors to Sony during the Preference Period), plus interest at the legal rate from the date of the Sony Transfers, together with all costs of this action;

C. That judgment be entered in favor of the Committee and against BMG, in an amount at least $1,643,880.83 (plus such additional transfer amounts that the Committee learns, through discovery or otherwise, were made by the Debtors to BMG during the Preference Period), plus interest at the legal rate from the date of the BMG Transfers, together with all costs of this action;

D. That judgment be entered in favor of the Committee and against RED, in an amount at least $855,806.89 (plus such additional transfer amounts that the Committee learns, through discovery or otherwise, were made by the Debtors to RED during the Preference Period), plus interest at the legal rate from the date of the RED Transfers, together with all costs of this action;

E. That the Sony Claims be disallowed until the Sony Transfers are repaid to the Debtors pursuant to 11 U.S.C. § 502(d);

F. That the BMG Claims be disallowed until the BMG Transfers are repaid to the Debtors pursuant to 11 U.S.C. § 502(d);

871115.009 - 1225971.1

  G. That the RED Claims be disallowed until the RED Transfers are repaid to the Debtors pursuant to 11 U.S.C. § 502(d); and

  H. That the Committee be granted such other and further relief as is just and proper.

Dated: New York, New York
    November 3, 2006

             **HAHN & HESSEN LLP**

             */s/ Mark S. Indelicato*
             Mark S. Indelicato (MI-1459)
             Mark T. Power (MP-1607)
             Edward L. Schnitzer (ES-6299)
             488 Madison Avenue
             New York, New York 10022
             (212) 478-7200

             *Counsel to The Official Committee of Unsecured Creditors of Musicland Holding Corp., et al.*

871115.009 - 1225971.1